UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NIKO C. MILLER,

    Plaintiff,

v.

TST TRANSFORCE, *et al.*,

    Defendants.

Case No. 2:15-cv-178
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth Preston Deavers

## OPINION AND ORDER

This matter is before the Court on Defendants TST Solutions, L.P., TST Truckload Express and Amar Iqbal Singh Virk's Motion for Summary Judgment (ECF No. 34.) Plaintiff has also filed a Motion to Strike (ECF No. 41.) For the reasons that follow, the Motion for Summary Judgment (ECF No. 34) is **DENIED**. Plaintiff's Motion to Strike (ECF No. 41) is **DENIED as MOOT**.

### I. BACKGROUND

On January 21, 2015, Defendants TST Transforce and Mr. Virk (also referred to as "Mr. Iqbal") removed this action from the Court of Common Pleas of Franklin County, Ohio, on the basis of diversity jurisdiction, pursuant to 28 U.S.C. §1332(a)(1). (ECF No. 1.) Plaintiff is a citizen of the state of Ohio. Defendant TST TransForce is incorporated in and has its principal place of business in Canada, and Defendant Virk is a citizen of Canada. (*Id.*)

Plaintiff brings two claims arising from an automobile accident: the first claim is for personal injury and attendant damages based on Defendant Virk's alleged negligence, and the second claim is against the trucking company under the doctrine of *respondeat superior*. (Compl., ECF No. 2.)

The accident giving rise to this lawsuit occurred in Franklin County, Ohio, on the evening of December 7, 2012. (*Id.*) It is undisputed that it was dark and rainy, and that Virk was driving his semi tractor-trailer on Route 33. It is also undisputed that Plaintiff was stopped at a stop sign on Bixby Road perpendicular to the Route 33 prior to entering the highway. It is undisputed that Plaintiff made the turn onto the highway. Defendant Virk asserts that when he activated his brake in an attempt to avoid colliding with Plaintiff, his trailer jack-knifed. (Virk Dep., ECF No. 33-2, at 81.) The trailer struck Plaintiff's car. Plaintiff claims that Virk "negligently operated a motor vehicle thereby causing personal injury to Plaintiff Niko C. Miller, who was operating his vehicle within the lawful use of the highway." (Compl., ECF No. 2, ¶2.) Defendant Virk asserts a counterclaim, alleging that, on that date, "Plaintiff negligently operated his motor vehicle [on] West Jefferson Avenue, Franklin County, Ohio, causing it to collide with Defendant Iqbal's [Virk's] semi-tractor trailer." (ECF No. 7, at p. 7, ¶6.) Defendants have moved for summary judgment (Def.'s Mot., ECF No. 34), and the Plaintiff has filed his memorandum in opposition (Pl.'s Opp., ECF No. 38.) The motion is ripe for consideration.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions" of the record which demonstrate "the absence of

2

a genuine issue of material fact." *Id.* at 323. The burden then shifts to the nonmoving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). However, the Sixth Circuit has explained that, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 257).

A genuine issue of material facts exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 486 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hamad v. Woodcrest Condo Ass'n*, 328 F.3d 224, 234-35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

### III. ANALYSIS

It is undisputed that Defendant Virk was traveling in his semi tractor-trailer on Route 33. It is also undisputed that Plaintiff entered Route 33 from a different direction, having been stopped at a stop sign waiting to turn onto Route 33. Defendants contend that Defendant Virk had the right of way, asserting that "[a] driver traveling within a statutorily defined right-of-way has an absolute

preference so long as the driver is driving lawfully." (citations omitted) (Def.'s Mot., ECF No. 34, at p. 4.) O.R.C. 4511.01(UU)(1) states that:

> (UU) "Right-of-way" means either of the following, as the context requires:
> (1) The right of a vehicle, streetcar, trackless trolley, or pedestrian to proceed uninterruptedly in a lawful manner in the direction in which it or the individual is moving in preference to another vehicle, streetcar, trackless trolley, or pedestrian approaching from a different direction into its or the individual's path ....

Thus, "[g]enerally, a motor vehicle has the right to proceed uninterruptedly in a lawful manner in the direction in which it is traveling in preference to any vehicle or pedestrian approaching from a different direction into its path." *Neu v. Estate of Nussbaum*, 2015-Ohio-159, 27 N.E. 3d 906, at ¶17 (12th Dist., Ohio Ct. App. 2015), 2015 Ohio App. LEXIS 139 (Jan. 20, 2015). Defendants argue that they are entitled to summary judgment against Plaintiff on the issue of the liability of Mr. Virk, the driver of the semi tractor-trailer, because he was "operating his vehicle in a lawful manner as he traveled down Route 33," and "had the right of way to proceed uninterrupted when Plaintiff decided to shoot out into his path with no time for the tractor-trailer to stop." (Def.'s Mot., ECF No. 34, at p. 6.) In contrast, Plaintiff presents evidence that he was traveling on Route 33 when he was struck in the rear by Defendant Virk. (Miller Dep., ECF No. 37, at p. 32.)

Plaintiff's claim against Defendant Virk is a basic negligence claim. "In order to recover on a negligence claim, a plaintiff must prove (1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, and (3) that the breach of the duty proximately caused the plaintiff's injury." *Chambers v. St. Mary's School*, 82 Ohio St.3d 563, 565, 697 N.E.2d 198 (1988). However, the case also implicates an Ohio safety statute, the violation of which may constitute negligence-per-

4

se. This Ohio law is often referred to as the "assured clear distance rule." O.R.C. 4522.21(A) provides the following:

> (A) No person shall operate a motor vehicle, trackless trolley, or streetcar at a speed greater or less than is reasonable or proper, having due regard to the traffic, surface, and width of the street or highway and any other conditions, and no person shall drive any motor vehicle, trackless trolley, or streetcar in and upon any street or highway at a greater speed than will permit the person to bring it to a stop within the assured clear distance ahead.

In *Cox v. Polster*, 174 Ohio St. 224, 226, 188 N.E.2d 421 (1963), the Supreme Court of Ohio addressed this rule, and stated that "[t]he only defense which may be made to a violation of this section is such assured clear distance was suddenly cut down or lessened by the entrance into the driver's lane of travel of some obstruction which rendered him unable, in the exercise of ordinary care, to avoid colliding with such obstruction." This "sudden emergency doctrine" is the basis for Defendants' motion for summary judgment.

Defendants assert that "[i]n a negligence action, the 'emergency doctrine' negates liability where 'there was a sudden and unexpected occurrence of a transitory nature which demanded immediate action without time for reflection or deliberation.'" *Wylie v. Fed Ex Ground Package Sys.*, No. 3:13 CV 2798, 2015 U.S. Dist. LEXIS 99761, at *8 (N.D. Ohio July 30, 2015) (quoting *Hatala v. Craft*, 165 Ohio App. 3d 602, 607, 2006- Ohio-789, 847 N.E.2d 501 (7th Dist. 2006)). (Def.'s Mot., ECF No. 34, at p. 5.)

In *Hatala*, the Court provided a primer on the interaction of an allegation of negligence and the violation of a specific safety statute:

> {¶ 18} Normally, when a legislative enactment imposes a specific duty for the safety of others, a violation of that statute constitutes negligence per se. *Id.* The negligence-per-se rule is regularly applied to cases in which a vehicle crosses *607 the center line of a highway and causes an accident. *Zehe v. Falkner* (1971), 26 Ohio St.2d 258,

5

> 55 O.O.2d 489, 271 N.E.2d 276; *Bauman v. Schmitter* (1989), 54 Ohio App.3d 51, 560 N.E.2d 827.
>
> {¶ 19} It is well established, though, that "[n]egligence *per se* does not equal liability *per se*. Simply because the law may presume negligence from a person's violation of a statute or rule does not mean that the law presumes that such negligence was the proximate cause of the harm inflicted." *Merchants Mut. Ins. Co. v. Baker* (1984), 15 Ohio St.3d 316, 318, 15 OBR 444, 473 N.E.2d 827; see, also, *Hitchens v. Hahn* (1985), 17 Ohio St.3d 212, 214, 17 OBR 447, 478 N.E.2d 797; *Hurst v. Ohio Dept. of Rehab. & Corr.* (1995), 72 Ohio St.3d 325, 650 N.E.2d 104.
>
> {¶ 20} A defendant may avoid liability for negligence in violating a traffic safety statute if a sudden emergency is found to have been the proximate cause of the accident. "In a negligence action, the so-called 'emergency doctrine' applies only where there was a sudden and unexpected occurrence of a transitory nature which demanded immediate action without time for reflection or deliberation and does not comprehend a static condition which lasted over a period of time." *Miller v. McAllister* (1959), 169 Ohio St. 487, 8 O.O.2d 485, 160 N.E.2d 231, paragraph six of the syllabus.
>
> {¶ 21} Thus, in order to avoid liability for injuries resulting from a failure to comply with a safety statute regulating the operation of a motor vehicle on the public highways, the defendant must show that an emergency occurred, that the defendant did not create the emergency, and that it was impossible to comply with the safety statute due to the emergency. *Mapes v. Opper* (1983), 9 Ohio App.3d 140, 141, 9 OBR 205, 458 N.E.2d 892. A self-created emergency, one arising from the defendant's own conduct or from circumstances under his or her control, cannot serve as an excuse. *Id.*

*Id.* at 606-607. As the *Hatala* Court noted, "[s]ome types of sudden-emergency defenses do not easily lend themselves to resolution in summary judgment." *Id.* at 607.

In the case at bar, Plaintiff contends that, because he was struck from the rear, "a genuine issue of material fact exists as to whether Defendant Virk could reasonably have avoided the collision." (Pls. Opp., ECF No. 38, at p. 2.) Plaintiff asserts that, "[i]n other words, the facts relied upon by Defendants do not show that it was impossible for Defendant Virk to avoid the collision with Plaintiff Miller." (*Id.*)

6

Plaintiff is the only witness on his own behalf. In his deposition, he testified about the accident as follows:

> Q. What was the weather like?
> A. It was raining pretty heavy, and it got dark early due to it raining so heavy.
>
> \*\*\*
>
> Q. What was the traffic like, the amount of traffic?
> A. It was busy on 33, so the traffic was heavy.

(Pl.'s Dep., ECF No. 37, at p. 24.)

> \*\*\*
>
> Q. Describe for me in your own words how this accident happened.
> A. I was sitting at the stop sign waiting to turn on to 33. Once I turned on to 33, I was driving down 33. I just remember being hit by something.
>
> Q. As you're sitting at the stop sign, you said there was some traffic going down 33, right?
> A. Correct.
>
> Q. Actually, there's a lot of traffic, right?
> A. Correct.
>
> Q. Your intention was to turn right down 33, right?
> A. Correct.
>
> Q. Did you look to your right and to your left before proceeding on to 33?
> A. I looked in front of me, I looked to my left, and I looked to my right.

(*Id.* at p. 26.)

> \*\*\*
>
> Q. Do you remember seeing a semi to your left driving down 33?
> A. In the right lane that I was turning into? No.

7

Q. Okay. So you didn't see a semi in your right lane. Did you see a semi in your left lane?

A. No.

Q. So no semi at all as you turned onto the road?

A. Correct.

Q. As you're sitting there at the stop sign, if you look left, about how far down the road can you see?

A. Over 100 yards.

***

Q. And no semis?

A. I know I seen some semis, but I don't remember what exactly lane or whether the semi was in front of me when I turned on the freeway. I don't remember that.

Q. Okay. So as you're sitting there and you're looking to your left and you're looking 100 yards down the road, you know there was a semi at some point on the road?

A. Correct.

Q. Do you know how far away that semi was from you?

A. There was a few semis.

Q. There were more than one?

A. There was a few semis coming down the highway at the time.

Q. Do you remember how many?

A. I don't remember how many?

Q. More than two?

A. I don't remember.

Q. Do you remember the color of any of the semis?

8

A. No.

Q. And you don't remember what lane any of the semis were in?
A. No.

Q. So you sit there for about less than a minute. You turn right on to 33. Do you turn into the right lane or the left-hand lane?
A. The right lane.

Q. How long were you driving down 33 before you felt an impact?
A. What do you want to know, seconds, minutes? I mean, what? Like what are you–

Q. Your best way of describing it.
A. I was driving down 33, so what do you mean travelling down 33. How long? How many seconds? I made a full complete turn and was hit driving down 33.

Q. Matter of seconds?
A. I don't know how to rephrase it as far as me driving down 33. Maybe I'd be better off describing it to you in distance than seconds or minutes.

Q. Okay.
A. Maybe about 50 yards from the stop sign, somewhere in there.

(*Id.* at pp. 28-30.)

Furthermore, to support the position that Defendant Virk may have been able to avoid the collision, Plaintiff points out that Defendant Virk testified in his deposition that he noticed Plaintiff "rocking" back and forth at the stop sign before Plaintiff pulled out from the stop sign and Bixby Road onto the highway. (Pl.'s Opp., ECF No. 38, at p. 4; Virk Dep., ECF No. 33-2, at p. 96.)1

---

1 That factor alone would not be a deciding factor, however, as courts have held that "[i]n determining whether [a Defendant] violated the assured-clear-distance rule, the issue is not whether

9

Defendant Virk's evidence of the accident includes his own deposition testimony and the testimony of a third-party witness to support the defense of "sudden emergency." Defendant Virk testified at deposition to his recollection of the events leading up to the accident, as follows:

> Q. All right. As you approached this intersection, this stop sign, you were initially in the right-hand lane?
> A. Yeah. Initially I was in the right-hand lane.
>
> Q. Okay. Something was – something caused you to move or start to move from the right-hand lane to the left-hand lane, correct?
> A. Yes.
>
> Q. What was that?
> A. That was the car coming from the side road like bumping and rocking.

(Virk Dep., ECF No. 33-2, at 77.) Defendant Virk testified further at his deposition that Plaintiff suddenly pulled out from the stop sign onto the highway, and created a sudden emergency. Virk swore that he did not have sufficient time to brake or respond to the sudden emergency created by the Plaintiff. (*Id.*, at 78-81.)

Thus, the issue is whether Plaintiff's evidence is sufficient to present genuine unresolved issues of material fact about whether Defendant Virk had sufficient reaction time to stop or whether he faced a "sudden emergency."2 As noted above, on summary judgment, this Court must credit the evidence of Plaintiff, as the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255 ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in

---

he observed [Plaintiff] at any particular point in time but whether [Plaintiff] suddenly appeared in his path. *Neu*, at 2015 Ohio App. LEXIS 139, at ***28.

2 Plaintiff has moved to strike arguments of defense counsel and references to deposition testimony relating to Officer Schwotzer's issuance of a traffic citation to Plaintiff, and any references to opinions from defense witnesses that the accident was unavoidable. (ECF No. 41.) The Court has not considered this information in determining whether Plaintiff, as the nonmoving party, has met his burden on summary judgment. Accordingly, Plaintiff's motion to strike is moot.

his favor.") (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). Plaintiff presents evidence that he was driving 50 yards down the highway before he was struck in the rear by Defendant Virk. (Pl.'s Dep., ECF No. 37, at p. 30.) Crediting the Plaintiff's evidence as the Court must, unresolved genuine issues of material fact remain as to Defendant Virk's alleged negligence, the proximate cause of the accident, and the share, if any, of Plaintiff's negligence which may have proximately caused his injuries. Plaintiff's evidence is sufficient to present conflicting evidence about whether Defendant Virk had sufficient reaction time to stop or whether he faced a "sudden emergency." *See Ali v. Bavarian Motor Transp., Inc.*, No. 2:03-CV-1104, 2005 U.S. Dist. LEXIS 27808, at *12-13 (S.D. Ohio Nov. 5, 2005).

Viewing this evidence in a light most favorable to Plaintiff as the non-moving party, the Court finds that genuine issues of material fact remain as to whether the accident occurred so suddenly that Defendant Virk could not avoid it.

### IV. CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment (ECF No. 34) is **DENIED**. Plaintiff's Motion to Strike (ECF No. 41) is **DENIED as MOOT**.

**IT IS SO ORDERED.**

3-21-2017
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**